***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and of the subject matter. *Page 2 
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to the North Carolina Workers' Compensation Act at the time of the admittedly compensable injury.
4. An employer/employee relationship existed between defendant-employer and plaintiff at the time of the admittedly compensable injury.
5. Defendant-employer is Sampson Correctional Institute and the North Carolina Department of Correction, with Corvel Corporation as the third-party administrator.
6. Plaintiff sustained an admittedly compensable injury to his right knee on or about August 25, 2008.
7. Plaintiff's pre-injury average weekly wage was $571.96, which yields a compensation rate of $381.33.
8. Plaintiff was paid for the entire day the admittedly compensable injury occurred.
9. The issues before the Full Commission are whether plaintiff unjustifiably refused suitable employment and whether plaintiff is entitled to reinstatement of temporary total disability compensation, and, if so, for what period.
 *********** EXHIBITS
1. The parties stipulated to the admissibility of the following exhibits, which were received into evidence:
 • Exhibit 1: Executed Pre-Trial Agreement.
 • Exhibit 2: Plaintiff's medical records.
 • Exhibit 3: Correspondence. *Page 3 
 • Exhibit 4: Industrial Commission forms and filings.
 • Exhibit 5: Functional capacity evaluation report dated July 29, 2009.
 • Exhibit 6: ESC claim profile.
 • Exhibit 7: Claims payment history.
2. Plaintiff's Exhibit 1, job search records, was admitted into evidence.
3. An email from plaintiff's counsel to Debra Wentz dated July 30, 2009, with the standard formatting, including the original "sent" date, was received into evidence by the Deputy Commissioner over defendant's objection as plaintiff's Exhibit 2.
4. The job description was admitted into the evidence of record by the Full Commission over plaintiff's objection.
 ***********
Based upon all of the competent, credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 44 years old at the time of the hearing before the Deputy Commissioner, with a date of birth of April 3, 1965. Plaintiff currently resides and has resided in Roseboro, North Carolina his entire life.
2. Plaintiff is a high school graduate and has earned certifications in animal control. Before beginning employment with defendant, plaintiff worked for Cumberland County for five and a half years. Plaintiff first worked in the parks and recreation department and then in animal control. Prior to that, plaintiff was the public works director for the Town of Stedman for 13 years. Plaintiff's job with the Town of Stedman primarily involved monitoring the town's water system and included physical work. *Page 4 
3. Plaintiff began employment with defendant in September 2007 as a correctional food service officer. Plaintiff supervised inmates working in the kitchen area, which required him to engage in physical activities such as breaking up inmates during altercations and lifting packages of food weighing up to 50 pounds.
4. On August 25, 2008, plaintiff was walking in the kitchen area and stepped into a drain hole, twisting his right leg and sustaining an admittedly compensable injury to his right knee.
5. Defendant sent plaintiff to Clinton Urgent Care, where he was diagnosed with a right knee sprain and given modified work restrictions.
6. During plaintiff's authorized treatment with Clinton Urgent Care, he was continued on modified work restrictions. Plaintiff was required to continue working in his pre-injury position, which entailed physical activities outside his restrictions, despite the work restrictions.
7. Plaintiff continued treating conservatively with Clinton Urgent Care and was diagnosed with a right knee medial meniscus tear. Plaintiff was referred to an orthopedic specialist.
8. Defendant authorized plaintiff to treat with Dr. Christopher Barnes, an orthopedist. Dr. Barnes diagnosed plaintiff with a right knee ACL tear and recommended arthroscopic surgery.
9. On October 21, 2008, Dr. Barnes performed right knee arthroscopy with ACL reconstruction, partial medial meniscectomy and chondroplasty of the patella.
10. Following the surgery, Dr. Barnes referred plaintiff to physical therapy and continued to keep plaintiff out of work. *Page 5 
11. During plaintiff's period out of work following the surgery, defendant continued plaintiff's salary as a corrections officer pursuant to the provisions of N.C. Gen. Stat. § 143-166.14.
12. Plaintiff continued to have numbness on the lateral side of his right leg and significant pain with activity. Defendant sent plaintiff to Dr. Zane Walsh, who ordered an EMG of plaintiff's right leg. The EMG was negative, and Dr. Walsh released plaintiff on June 11, 2009 to unspecified "restricted activity." At that time, Dr. Walsh believed that no further treatment measures were necessary.
13. On June 16, 2009, plaintiff returned to work in what defendant referred to as a temporary modified light-duty job. Plaintiff's assignment that day was to put vehicle files in chronological order.
14. Katharine Courtney, an administrative officer with defendant, testified that the job plaintiff performed on June 16, 2009 was not a position that defendant would hire an outsider to perform. The filing position was a job plaintiff was temporarily assigned to do in order to bring him back to work within his physical limitations.
15. The day after plaintiff performed the filing job, he called defendant and reported that he had experienced a significant increase in pain in his right knee the day before and therefore could not continue doing the job. Plaintiff requested further medical evaluation for his right knee.
16. Plaintiff did not return to work with defendant after June 16, 2009.
17. Defendant terminated plaintiff's salary continuation as of June 30, 2009.
18. On July 1, 2009, Dr. Barnes released plaintiff at maximum medical improvement with a 15 percent permanent partial impairment rating to his right knee. Dr. Barnes indicated *Page 6 
plaintiff could return to work in a data entry job and ordered a functional capacity evaluation (FCE) to determine plaintiff's permanent restrictions.
19. On July 29, 2009, plaintiff underwent the FCE. The FCE evaluator concluded plaintiff could safely work in the light to medium duty category with no lifting over 28 pounds.
20. Following Dr. Barnes' release on July 1, 2009, defendant sent letters to plaintiff on July 27, 2009 and August 12, 2009 requesting he return to work. Defendant did not offer plaintiff a specific job position.
21. Defendant did not send any a specific job description to any physician or to plaintiff for review or approval after plaintiff's release from Dr. Barnes. Defendant did not provide a job title and stated only that plaintiff had been "placed back on the work schedule."
22. On July 30, 2009, plaintiff's counsel emailed defendant's adjustor requesting clarification of the position to which defendant wanted plaintiff to return. This request was never responded to or answered by defendant.
23. At the hearing before the Deputy Commissioner, Ms. Courtney indicated that the data entry position to which defendant sought to return plaintiff in July and August 2009 was the same temporary modified light-duty position that plaintiff performed for one day on June 16, 2009. The light duty job duties appear to have been selected from various vacant positions. Ms. Courtney stated that she intended to have plaintiff work in the administration building where she could supervise him because they were short-staffed there. She felt it would take plaintiff two to three months to complete data entry work on the fixed assets. The motor vehicle filing duties were to cover for a worker who was out. When not doing data entry work or working on food service reports, plaintiff would have been updating existing policy manuals and occasionally assisting with the switchboard. Because plaintiff was under restrictions of no physical contact *Page 7 
with inmates, plaintiff would be allowed to stay in the conference room with the door closed for 30 minutes twice daily while an inmate cleaned the building. Although Ms. Courtney testified that plaintiff could work at the position indefinitely or "basically permanently," when she was asked whether there was a specific position to which plaintiff would be returning, Ms. Courtney stated "There were — I'm not sure if — well, he's still working under his position number, just with different duties."
24. The Full Commission finds by the greater weight of the evidence that the offer of employment defendant made to plaintiff was make work and not suitable employment. Therefore, plaintiff was justified in his refusal to return to the proffered employment. Plaintiff has not been offered and has not resumed his regularly assigned duties, and therefore he is entitled to reinstatement of salary continuation pursuant to N.C. Gen. Stat. § 143-166.14 until expiration of the applicable two-year period.
25. On October 12, 2009, defendant sent a letter to plaintiff notifying him that his employment was terminated for the failure to call or report to work for three consecutive days after light duty work was made available.
26. On October 27, 2009, Dr. Barnes indicated that plaintiff could return to work within the FCE restrictions and that plaintiff could follow up with him for further treatment as needed.
27. After his termination from defendant, plaintiff began drawing unemployment compensation in the weekly amount of $280.00. In order to remain eligible for unemployment compensation, plaintiff engaged in a job search. Plaintiff's job search was unsuccessful. Plaintiff pursued at least two jobs per week in fields such as rental centers and automotive sales, *Page 8 
which he reasonably believed would comport with his physical limitations related to his compensable right knee injury.
28. Plaintiff's search for suitable employment has been hampered due to the restrictions placed upon him for his right knee. Plaintiff also stated most of the businesses he has contacted have not been hiring. After his termination on October 12, 2009, plaintiff has been capable of some work and has made a reasonable job search.
29. After June 30, 2009, defendant paid plaintiff his remaining sick and vacation leave due in a total amount of about $1,800.00.
30. As of the date of the hearing before the Deputy Commissioner, plaintiff continued to have difficulty squatting and was experiencing pain and symptoms in his right knee.
 *********** *Page 9 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On August 25, 2008 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Defendant unilaterally terminated plaintiff's salary continuation following his one-day return to work on June 16, 2009. Plaintiff did not return to work in his "regularly assigned duties," as required for termination of salary continuation under N.C. Gen. Stat. § 143-166.14. Therefore, plaintiff is entitled to reinstatement of salary continuation for the applicable two-year period from the date of his injury. N.C. Gen. Stat. § 143-166.14;Vandiford v. North Carolina Dept. of Correction,97 N.C. App. 640, 389 S.E.2d 408, cert. denied,326 N.C. 805, 393 S.E.2d 907 (1990),498 U.S. 963, 111 S.Ct. 398, 112 L.Ed.2d 407 (1991).
3. The temporary modified light-duty position that plaintiff worked on June 16, 2009 was make work and was not indicative of plaintiff's wage earning capacity. Further, the offers of the same position to plaintiff following his July 1, 2009 release by Dr. Barnes did not constitute offers of suitable employment to plaintiff. Thus, when plaintiff declined said offers, he did not unjustifiably refuse suitable employment. N.C. Gen. Stat. § 97-32.1; Peoples v. Cone MillsCorp., 316 N.C. 426, 342 S.E.2d 798 (1986).
4. Plaintiff has remained disabled since defendant's termination of his salary continuation effective June 30, 2009, in that he is capable of some work and has engaged in a reasonable yet unsuccessful job search. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. As such, upon the expiration of the salary continuation payments as of August 25, 2010, plaintiff is entitled to payment of total disability compensation continuing until plaintiff returns to work or upon further Order of the Commission. N.C. Gen. Stat. §§ 97-29, 143-166.16. Defendant is entitled to a credit under N.C. Gen. Stat. § 97-42.1 against back temporary total disability compensation owed in the full amount of the unemployment compensation that plaintiff has received.
6. Defendant is not entitled to any credit against back temporary total disability compensation owed for the vacation and leave pay that plaintiff received after July 1, 2009, as said amounts were due and payable anyway. N.C. Gen. Stat. § 97-42.
7. Plaintiff is entitled to have defendant continue to provide him with medical treatment that is reasonably required to effect a cure, provide relief and/or lessen the period of plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
 *********** *Page 10 
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendant shall pay plaintiff salary continuation for the applicable two-year period from his date of injury. This amount has accrued and shall be paid in a lump sum.
2. Subject to the attorney's fee approved below, defendant shall pay to plaintiff total disability compensation in the amount of $381.33 per week for the period beginning August 26, 2010, and continuing until plaintiff returns to work or further Order of the Commission, subject to deduction for a credit in the amount of the total unemployment compensation plaintiff has received. Any amount that has accrued shall be paid in a lump sum.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraph 2 above, after application of the credit, is approved for plaintiff's counsel and shall be paid as follows: 25% of any lump sums shall be deducted and paid directly to plaintiff's counsel; thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
4. Dr. Barnes is hereby designated as plaintiff treating physician, and, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, defendant shall authorize and pay for the treatment that Dr. Barnes recommends for plaintiff's compensable right knee injury, including but not limited to surgery, physical therapy, vocational rehabilitation, pain management, prescriptions, referrals and mileage.
5. Defendant shall pay the costs.
This 13th day of December, 2010. *Page 11 
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 12